```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

DR. THERESA BRADLEY,            *

    Plaintiff,              *

vs.                             *       CASE NO. 4:10-CV-46 (CDL)

AARON REESE, in an individual   *
capacity, *et al.*,
                                                                  *

    Defendants.

## O R D E R

In this *pro se* action, Plaintiff makes various claims arising from her experiences at Columbus State University. Plaintiff previously filed an action in the United States District Court for the Northern District of Georgia based on the exact same set of facts. In that action, Plaintiff sought to proceed *in forma pauperis*, and the magistrate judge recommended that Plaintiff's claims be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). *Bradley v. Univ. Sys. of Ga.*, No. 1:10-CV-0720, 2010 WL 1416862, at *1 (N.D. Ga. Mar. 11, 2010) [hereinafter *Bradley I*]. The district court agreed and adopted the magistrate's recommendation. *Bradley v. Univ. Sys. of Ga.*, Civil Action File No. 1:10-CV-720-TWT, 2010 WL 1418387, at *1 (N.D. Ga. Apr. 8, 2010). After the Northern District of Georgia dismissed her claims, Plaintiff retooled her Complaint and filed it in this Court, adding as Defendants Vicky Langston ("Langston"), Inessa Levi ("Levi"), and

Timothy Mescon ("Mescon"). For the reasons set forth below, the Court finds that Plaintiff's claims against the *Bradley I* Defendants are barred by res judicata and that Plaintiff's Complaint fails to state a claim against Defendants Langston, Levi, and Mescon. Accordingly, Defendants' Motion to Dismiss (ECF No. 21) is granted.

Also pending before the Court is Plaintiff's Petition for Writ of Mandamus (ECF No. 33). As discussed below, Plaintiff's petition is denied.

## MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal

2

evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

A complaint may be dismissed under Rule 12(b)(6) if the allegations show that an affirmative defense, such as res judicata, bars recovery. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). While a court may not ordinarily consider matters outside the pleadings in ruling on a 12(b)(6) motion to dismiss, a court may take judicial notice of public records—including a complaint filed in a separate action–without converting a motion to dismiss into a motion for summary judgment. *E.g., Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53-54 (11th Cir. 2006).

FACTUAL ALLEGATIONS

In 2008, Plaintiff, a Georgia resident over the age of sixty-two, registered as a post-baccalaureate student at Columbus State University ("CSU"). Am. Compl. ¶¶ 16, 18, ECF No. 17; *accord* Compl. ¶ 16, *Bradley v. Univ. Sys. of Ga.*, 1:10-cv-00720-TWT (N.D. Ga. Jan. 21, 2010), ECF No. 2 [hereinafter *Bradley I* Compl.]. On September 2, 2008, Plaintiff was on the CSU campus to meet with Defendant Michael Daniels ("Daniels") to discuss auditing an evening

3

Master of Business Administration ("MBA") class during the fall 2008 semester. Am. Compl. ¶ 19; *accord Bradley I* Compl. ¶ 16. For reasons not explained in the Complaint, Plaintiff was arrested by a CSU security officer ("CSU Security") and thrown off campus, and Plaintiff was told that she would be incarcerated in the Muscogee County Jail if she returned to campus. Am. Compl. ¶¶ 20-27; *accord Bradley I* Compl. ¶¶ 17-18.

In March 2009, Plaintiff applied to the CSU MBA program under a policy that allows Georgia residents sixty-two years old or older to enroll, tuition-free, in state universities. Am. Compl. ¶¶ 16, 30; *accord Bradley I* Compl. ¶¶ 13, 20. Plaintiff provided CSU with a copy of her academic transcript from Georgia State University, which reflected that she held undergraduate and graduate degrees in psychology and also demonstrated that Plaintiff was a non-business major. Am. Compl. ¶ 17. In May 2009, Plaintiff received an email from Defendant Aaron Reese ("Reese") notifying Plaintiff that she had been admitted to the MBA program and advising her to contact Daniels, her academic advisor. Am. Compl. ¶ 32; *accord Bradley I* Compl. ¶ 21. At the time, Plaintiff was not told that she was admitted as an "MBA Provisional" student; she did not discover that she was an "MBA Provisional" student until January 14, 2010. *Id.* ¶¶ 34-35, 65, 67; *accord Bradley I* Compl. ¶¶ 21, 23-24.

Plaintiff met with Daniels in June 2009 to discuss her course schedule. Am. Compl. ¶¶ 36-37; *accord Bradley I* Compl. ¶ 22. Daniels directed Plaintiff to register for four MBA courses that were scheduled to be offered in the fall of 2009. Am. Compl. ¶ 38; *accord Bradley I* Compl. ¶ 31. Plaintiff alleges that Daniels did not, however, tell Plaintiff that she was required to complete eight undergraduate business courses before enrolling in the MBA courses. Am. Compl. ¶ 39; *accord Bradley I* Compl. ¶¶ 32-35. According to Plaintiff, CSU's computer system should have prevented Plaintiff from enrolling in the four MBA courses because she had not completed the prerequisite courses, but Defendants allegedly manipulated the system to enable Plaintiff to enroll in the MBA classes without being adequately prepared for them. Am. Compl. ¶¶ 41-43.

In mid-October 2009, Plaintiff learned about the eight undergraduate business courses that were prerequisites to the MBA courses. *Id.* ¶¶ 44, 46-47; *accord Bradley I* Compl. ¶¶ 41, 52. Plaintiff sought to withdraw from her MBA courses, but her request for academic withdrawal was denied. Am. Compl. ¶¶ 49, 53; *accord Bradley I* Compl. ¶¶ 44-46. In mid-November 2009, Reese referred Plaintiff to the CSU counseling center for mental health counseling. Am. Compl. ¶¶ 153-54; *accord Bradley I* Compl. ¶ 109.

In late November 2009, Plaintiff asked to be reclassified as an undergraduate student, and she sought permission to register for four

5

of the undergraduate business courses that were prerequisites to the MBA courses. Am. Compl. ¶ 58; *accord Bradley I* Compl. ¶¶ 53-54. Plaintiff believed that her request was granted and that she would be permitted to take four undergraduate business courses during spring 2010. Am. Compl. ¶¶ 59-60; *accord Bradley I* Compl. ¶ 55. On January 14, 2010, however, Plaintiff learned that she was not given undergraduate status or permission to complete the undergraduate business courses. Am. Compl. ¶ 64; *accord Bradley I* Compl. 21 ¶ 44.[1] The same day, Plaintiff was placed on academic exclusion and removed as a student from CSU; she was also told that she would be arrested if she returned to campus for any reason, including if she returned to apply for employment. Am. Compl. ¶¶ 69-70, 90; *accord Bradley I* Compl. 21 ¶ 45, 22 ¶ 47, 26 ¶ 57.

In both this action and in Plaintiff's previous action, Plaintiff named as Defendants "University System of Georgia," Reese, Daniels, and Linda Hadley ("Hadley"). Am. Compl. ¶¶ 8, 10-12; *accord Bradley I* Compl. ¶¶ 6-9. In the present action, Plaintiff also names as Defendants Columbus State University, "a State of Georgia division of the University System of Georgia," Langston, Levi, and Mescon. Am. Compl. ¶¶ 9, 13-15. Plaintiff contends that Defendants' actions interfered with her federal and state rights "of equal access to

---

[1] Plaintiff's complaint in *Bradley I* contains sequentially numbered paragraphs until paragraph 63 on page 20; on page 21, the numbering restarts at 44.

6

state public university property," her federal and state rights to apply for employment, and her federal and state rights to advance her education. Am. Compl. ¶¶ 76, 90; *accord Bradley I* Compl. 23 ¶ 48. Plaintiff also claims that Defendants' actions have damaged her student loan status and scholarship applications. Am. Compl. ¶ 83; *accord Bradley I* Compl. 24 ¶ 53. Plaintiff contends that Defendants' actions give rise to (1) claims under 42 U.S.C. § 1983 ("§ 1983") for violations of Plaintiff's rights to equal access to education and public facilities, Am. Compl. ¶¶ 119-131; *accord Bradley I* Compl. ¶¶ 79-90; (2) claims under § 1983 for threatening Plaintiff with arrest and incarceration, Am. Compl. ¶¶ 132-137; *accord Bradley I* Compl. ¶¶ 91-94; (3) claims for violation of Georgia's public policy regarding the protection of senior citizens, Am. Compl. ¶¶ 138-141; *accord Bradley I* Compl. ¶¶ 95-98; (4) claims for professional negligence, Am. Compl. ¶¶ 142-147; *accord Bradley I* Compl. ¶¶ 99-103; (5) claims for breach of contract, Am. Compl. ¶¶ 148-151; *accord Bradley I* Compl. ¶¶ 104-107; (6) claims for defamation, Am. Compl. ¶¶ 152-160; *accord Bradley I* Compl. ¶¶ 108-116; (7) claims for tortious interference with business, Am. Compl. ¶¶ 161-164, *accord Bradley I* Compl. ¶¶ 117-121; and (8) claims for honest services fraud, Am. Compl. ¶¶ 165-174. Plaintiff's § 1983 claims and her claims for violation of Georgia's public policy regarding the protection of senior citizens are against all Defendants. Am. Compl. ¶¶ 119, 132,

7

138. With the exception of her defamation claim, which appears to be against Reese only, Am. Compl. ¶ 152, Plaintiff's remaining claims are against Defendants Reese, Daniels, Hadley, Langston, Levi, and Mescon "with joint and several liability." *Id.* ¶¶ 142, 148, 165; *id.* at p. 54.

DISCUSSION

## I. Claims Against *Bradley I* Defendants

Defendants contend that Plaintiff's claims are barred by res judicata. Plaintiff did not respond to Defendants' res judicata argument. "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). A claim is barred under the doctrine of res judicata if "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (internal quotation marks omitted). The Court is satisfied that all four elements are met as to Plaintiff, the University System of Georgia, CSU, Reese, Daniels, and Hadley. Therefore, Plaintiff's claims against these Defendants are precluded.

First, Plaintiff cannot seriously dispute that the same cause of action is involved in both *Bradley I* and this action. If a "case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action," then "the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* at 1293 (internal quotation marks omitted). Here, both *Bradley I* and this case are based on the exact same facts. Furthermore, Plaintiff's claims in both actions are nearly identical.

Plaintiff brought the following claims in both cases: (1) § 1983 claims for violations of Plaintiff's rights to equal access to education and public facilities, Am. Compl. ¶¶ 119-31; *Bradley I* Compl. ¶¶ 79-90; (2) § 1983 claims for threatening Plaintiff with arrest and incarceration, Am. Compl. ¶¶ 132-37; *Bradley I* Compl. ¶¶ 91-94; (3) claims for violation of Georgia's public policy regarding the protection of senior citizens, Am. Compl. ¶¶ 138-41; *Bradley I* Compl. ¶¶ 95-98; (4) claims for professional negligence, Am. Compl. ¶¶ 142-47; *Bradley I* Compl. ¶¶ 99-103; (5) claims for breach of contract, Am. Compl. ¶¶ 148-51; *Bradley I* Compl. ¶¶ 104-07; (6) claims for defamation, Am. Compl. ¶¶ 152-60; *Bradley I* Compl. ¶¶ 108-16; and (7) claims for tortious interference with business, Am. Compl. ¶¶ 161-64, *Bradley I* Compl. ¶¶ 117-21. The only "new" claim in this action is Plaintiff's "honest services fraud" claim. Am. Compl. ¶¶ 165-74. That claim is predicated upon Defendants' alleged

9

"false statements regarding material facts" concerning the MBA program requirements and their alleged breach of their duty "to provide honest academic advisory services," which allegedly caused Plaintiff academic and economic harm. Am. Compl. ¶¶ 165-74. This "new" claim is nothing more than a slightly repackaged version of Plaintiff's "professional negligence" claim. *Compare id.*, *with* Am. Compl. ¶¶ 142-147, *and Bradley I* Compl. ¶¶ 99-103. Accordingly, the Court concludes that both claims are really the same cause of action.

Second, Plaintiff cannot dispute that the identity of parties requirement is met as to Plaintiff, the University System of Georgia, CSU, Reese, Daniels, and Hadley. Identity of the parties exists when parties "were actual parties in the original action. *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990). Therefore, identity of parties exists as to Plaintiff, the University System of Georgia, Reese, Daniels, and Hadley—all of whom were actual parties in *Bradley I*. Identity of parties also exists if parties "are or were in privity with the parties to the original suit." *Id.* Privity between a party and a nonparty exists if, among other things, "a substantive legal relationship existed between the" nonparty and the party or "the nonparty was adequately represented by someone who was a party to the suit." *Griswold,* 598 F.3d at 1292. In the present action, Plaintiff seeks to assert claims against CSU, which is part of the University System of Georgia and is therefore in privity with the University

System of Georgia. *See, e.g., id.* at 1292 (finding that company owner was in privity with company). Therefore, identity of parties also exists as to CSU.

Third, Plaintiff cannot dispute that the United States District Court for the Northern District of Georgia was a court of competent jurisdiction for *Bradley I*.

Finally, the Court is satisfied that the Northern District of Georgia's dismissal under 28 U.S.C. § 1915(e)(2)(B) was an adjudication on the merits for res judicata purposes. The Court recognizes that, under a prior version of 28 U.S.C. § 1915, a dismissal due to frivolity was an exercise of discretion that was not a dismissal on the merits. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992) (construing prior version of 28 U.S.C. § 1915(d)). Under the present version of 28 U.S.C. § 1915(e)(2)(B), however, "the court *shall* dismiss the case" if the court determines that the action is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B) (emphasis added). Here, the Northern District of Georgia took the facts in Plaintiff's complaint as true and concluded that Plaintiff's claims were "without arguable merit either in law or fact." *Bradley I*, 2010 WL 1416862, at *2 (internal quotation marks omitted).

Specifically, the Northern District of Georgia found that the University System of Georgia was not a proper party and that the claims against it should be dismissed. *See Bradley I*, 2010 WL 1416862, at *5 (explaining that the University System of Georgia does not have the capacity to be sued and that the Board of Regents of the University System of Georgia is the proper party for claims against the University System of Georgia and its institutions); *see* Ga. Const. art. 8 § 4 ¶ 1(b) ("The government, control, and management of the University System of Georgia and all of the institutions in said system shall be vested in the Board of Regents of the University System of Georgia.").

The court further found that even if Plaintiff's § 1983 claims against the University System of Georgia were construed as claims against the proper party—the Board of Regents—the § 1983 claims would fail. *Bradley I*, 2010 WL 1416862, at *6. The Board of Regents is an arm of the state entitled to Eleventh Amendment immunity. *Id.* at *6 (citing *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301-02 (11th Cir. 2007)). Congress has not abrogated the states' immunity from § 1983 suits, and the Board of Regents has not waived its Eleventh Amendment immunity as to Plaintiff's § 1983 claims. *Id.* (citing *Williams*, 477 F.3d at 1301-02).

Turning to the § 1983 claims against the individual *Bradley I* Defendants who were administrators at CSU—Daniels, Hadley, and

Reese—the court found that those claims were premised upon a violation of the Fourteenth Amendment's Equal Protection Clause and that Plaintiff's claims failed because she did "not identify any similarly situated individuals" outside her protected class who were treated more favorably. *Id.* at \*7. The court also found that any procedural or substantive due process claims against Daniels, Hadley, and Reese were barred by qualified immunity. *Id.* at \*6 n.10, \*7 n.11.

As to Plaintiff's "public policy" claims against all Defendants, the court found that none of the Georgia statutes providing special protection for the elderly applied to Plaintiff. *Id.* at \*7. Furthermore, the court did not find "any statute or Georgia case that authorizes a civil action for violating public policy to protect the elderly" and knew "of no cause of action that exists for public policy violations." *Id.* Accordingly, the court concluded that Plaintiff's "public policy" claims were frivolous. *Id.*

With regard to Plaintiff's state law tort claims, the court found that Plaintiff's tort claims against the University System of Georgia (or Board of Regents) failed due to sovereign immunity because a plaintiff cannot bring state law claims against an arm of the state—such as the Board of Regents—in federal court. *Id.* at \*8 (citing *Alyshah v. Georgia*, 230 F. App'x. 949, 950 (11th Cir. 2007) (per curiam)). The court also found that Daniels, Hadley, and Reese

13

were immune from suit under the Georgia Tort Claims Act ("GTCA"), O.C.G.A. §§ 50-21-20 to -37, because the GTCA applied to the acts about which Plaintiff complained and because Daniels, Hadley, and Reese were all state employees acting within the scope of their employment when they took the actions challenged in Plaintiff's complaint. *Id.* at \*8-\*9 (citing *Hardin v. Phillips*, 249 Ga. App. 541, 543, 547, 547 S.E.2d 565, 567 (2001)).

In sum, the Northern District of Georgia took the facts alleged in Plaintiff's complaint as true and found that they failed as a matter of law. Plaintiff had an opportunity to litigate her claims in the Northern District of Georgia, but her claims failed, and none of the shortcomings in Plaintiff's complaint could be remedied through more specific pleading. The Court thus concludes that the Northern District of Georgia's dismissal was an adjudication on the merits. Accordingly, Plaintiff's claims against the *Bradley I* Defendants are barred by res judicata. Furthermore, even if Plaintiff's claims against the *Bradley I* Defendants were not barred by res judicata, the Court is satisfied that Plaintiff's Complaint in this action fails to state a claim against the *Bradley I* Defendants for the same reasons Plaintiff's claims in her prior action failed.

**II. Claims Against Langston, Levi, and Mescon**

As for Plaintiff's individual capacity claims against Langston, Levi, and Mescon, the Court finds that those claims fail, too.

14

First, Plaintiff's "public policy" claims against these Defendants fail for the same reasons those claims failed in *Bradley I*. *Bradley I*, 2010 WL 1416862, at *7 (finding no "public policy" claims regarding elderly exist under Georgia law).

Second, Plaintiff's state law tort claims against Langston, Levi, and Mescon fail for the same reasons Plaintiff's claims against the individual Defendants in *Bradley I* failed. *Id.* at *8-*9 (finding that GTCA does not permit action in federal court against state employees acting within scope of employment). Based on the allegations in the Complaint, the acts Plaintiff complains of are covered by the GTCA, and Langston, Levi, and Mescon were all employees of CSU at the time of the events giving rise to this lawsuit. *See id.* at *8 (explaining when GTCA applies). The precise basis for Plaintiff's claims against each of these Defendants is not entirely clear, but Plaintiff asserts that "Defendants," collectively, violated her rights and caused her injuries by failing to notify her of the prerequisites for the MBA program and by barring her from campus. Such acts would be in the scope of employment for university professors and administrators, such as Langston, Levi, and Mescon.

Plaintiff's main complaint against Langston is that Langston, Plaintiff's second academic advisor, failed to advise Plaintiff of the prerequisites for the MBA program and told Plaintiff that she

15

should go register for the MBA program at Kennesaw State University. Am. Compl. ¶¶ 56-57. These acts of advising a student are functions which fall within the scope of Langston's employment as a university professor. *Id.* at *9. Langston is therefore immune from suit for Plaintiff's tort claims. *Id.*

Plaintiff's chief claims against Levi and Mescon appear to rest on her allegation that they failed to grant her an emergency hearing before she was thrown off campus in January 2010. Am. Compl. ¶ 80. Such a decision is within these two Defendants' scope of employment; Levi and Mescon are therefore immune from suit for Plaintiff's tort claims. *Bradley I*, 2010 WL 1416862, at *9.

Turning to Plaintiff's § 1983 claims against Langston, Levi, and Mescon, the Court finds that they, too, must be dismissed.[2] To the extent Plaintiff's § 1983 claims here are premised upon equal protection principles, those claims fail because, as in *Bradley I*, Plaintiff failed to allege that she was treated differently than similarly situated persons outside her protected class. *Bradley I*, 2010 WL 1416862, at *7. Therefore, Plaintiff has failed to allege an equal protection violation that is contrary to clearly established

---

[2]Defendants' motion to dismiss specifically addresses Plaintiff's § 1983 claims and makes a variety of arguments regarding why Plaintiff's claims fail, but Plaintiff did not respond to those arguments. Rather, Plaintiff's response focuses on her state law claims, which, as discussed above, must be dismissed. *See generally* Pl.'s Resp. to Defs.' Pre-Answer Mot. to Dismiss, ECF No. 24.

16

law, and Langston, Levi, and Mescon are therefore entitled to qualified immunity on any equal protection claims.

To the extent Plaintiff attempts to assert substantive due process claims, they fail because, for the reasons set forth in *Bradley I*, Langston, Levi, and Mescon are entitled to qualified immunity on such claims. *Id.* at *6 n.10. To the extent Plaintiff attempts to assert procedural due process claims, they fail because Plaintiff did not allege that she exhausted the appeals procedures provided by CSU or that the appeals procedure in her case did not comply with established policies. *Id.* In fact, the record reflects that Plaintiff filed her complaint in *Bradley I* a mere week after Plaintiff found out on January 14, 2010 that she had been placed on academic exclusion and barred from campus. *Bradley I* Compl.

Finally, to the extent Plaintiff attempts to assert Fourth Amendment unreasonable seizure claims based on the acts of CSU Security, those claims fail because Plaintiff has not alleged a basis for holding Langston, Levi or Mescon individually liable, and Langston, Levi, and Mescon are therefore entitled to qualified immunity on any Fourth Amendment claims. To be held liable under § 1983, a person must personally participate in the alleged constitutional violation, or a person must be a supervising official whose actions are causally connected to the alleged constitutional deprivation. *E.g., Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.

1990). Assuming that Plaintiff's Complaint adequately alleges a "seizure" within the meaning of the Fourth Amendment, Plaintiff does not allege that Langston, Levi, or Mescon personally participated in the seizure by physically arresting Plaintiff or ordering the arrest despite knowing that the arrest was not proper. Plaintiff also does not allege facts sufficient to hold Langston, Levi, or Mescon liable under a supervisory liability theory. Even if Plaintiff had alleged that either Langston, Levi, or Mescon had supervisory authority over CSU Security, there are still no allegations sufficient to give rise to supervisory liability, such as allegations that these Defendants were aware of a history of widespread Fourth Amendment violations by CSU Security but failed to take corrective measures. *See id.* (explaining that § 1983 supervisory liability can be established by history of uncorrected widespread abuses). Accordingly, any Fourth Amendment claims against these Defendants must be dismissed.

### III. **Plaintiff's Petition for Writ of Mandamus**

Plaintiff filed a petition for writ of mandamus to require the CSU registrar to provide Plaintiff with an official transcript of her CSU course work. Plaintiff contends that CSU put a "hold" on her record and refuses to provide Plaintiff with a copy of her official CSU transcript. Plaintiff claims that the "hold" is a violation of her "rights to transfer to another institution of higher learning." Pl.'s Pet. for Writ of Mandamus Ex. A, Letter from T. Bradley to CSU

18

Fin. Aid Dir. & CSU Office of Admissions 1, Oct. 14, 2010, ECF No. 33. After Plaintiff filed her mandamus petition, counsel for CSU informed Plaintiff that CSU will provide Plaintiff with an official transcript if she submits a new transcript request. CSU's Resp. to Pl.'s Pet. for Writ of Mandamus Ex. A, Letter from L. Lones to T. Bradley, Oct. 20, 2010, ECF No. 34-2. Given that CSU has agreed to provide Plaintiff with a copy of her official transcript, Plaintiff's request for mandamus relief is now moot, and her petition (ECF No. 33) is therefore denied.

## CONCLUSION

As discussed above, Defendants' Motion to Dismiss (ECF No. 21) is granted. Plaintiff's Petition for Writ of Mandamus (ECF No. 33) is denied. All other pending motions are now moot.

IT IS SO ORDERED, this 8th day of November, 2010.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE